Appellee, Mr. Berthelsen. I didn't hear you. It's time. We're calling your case. Okay, you're ready for me to go. We're ready for you. Okay. to inspect and copy judicial records. However, there is a limitation. It's not absolute. It's a presumption. In Nixon v. Warner Communications, Incorporated. It's 435 U.S. 589 on page 597-598. A court may deny access to records if the records become a vehicle for improper purposes. For example, if a person's ID is not valid, the common law right of inspection has bowed before the power of a court to ensure that its records are not used to gratify private spite or promote public scandal through the publication of the painful and sometimes disgusting details of divorce case. This case is a lot more than just a messy divorce case. Gratifying spite is what happened in this case. When the defendant learned that my client was going to break up his affair with him, he did everything he could to destroy her. In fact, even contacting family members, including a 14-year-old, then a 15-year-old daughter with text messages designed to get revenge for dropping him. If you see page 1 of Exhibit A of Record Excerpt D, the bottom right-hand corner, you will see a picture of my client. My client filed a motion to seal records and for leave to file documents under seal, which was granted the same day. The order unsealing this case is why we are here today, and that's in Record Excerpt C. The defendant went on to post a letter to my client, which was intimate pictures of my client on a pornography website, which brought in the Internet porn websites as additional defendants in the lawsuit. It also charged the defendant with a felony under Texas Revenge Porn statute, and he eventually pled guilty to a misdemeanor harassment charge. This is a unique case, unique in that after researching, I could find no other cases in the Fifth Circuit dealing with a victim of sexual assault. This is a unique case of a victim of revenge porn appealing an order revoking or denying the sealing of the case by the district court. My survey of Fifth Circuit cases pulled up two cases in which revenge porn is mentioned. However, they were not cases on which the plaintiff was appealing the denying of her sealing of the case. I surveyed all the cases cited by the appellee and the amicus curiae in their briefs and found no case dealing with the subject. Are there measures that the court could have done, and that you all could have requested, short of sealing, that would have protected your client's interests, filing pseudonymously? Yes, there are measures that would have protected her, some such as giving her a pseudonym. Did you all ask for that? No, sir, we did not ask for that. I was wondering if there was a reason. The case was sealed almost ten days after it got in, I'm estimating, about ten days, less than ten days after. You didn't need it because you had the broader remedy. Sir? You had the broader remedy, so you didn't need to file pseudonymously. I didn't quite understand, but it was sealed, and I just assumed that. You don't need a Jane Doe sealed case. Right. I didn't feel like there was any reason to change anything. I guess my question is this. If the court were to redact your client's name and other personally identifying characteristics, would that take care of your client's concerns? We'd be very happy, yes, sir. If we could have it retroactively done, retract her name and any mention of her family members, we'd be very satisfied. Did you offer that to Judge Rodriguez? No, sir, no, ma'am, because at the time, we were fighting the motion to unseal the case. I really don't understand why Judge Rodriguez changed his mind. Was it the influence of that Benoit Lee case, or was it the fact that there was a nationally known professor seeking to unseal, or did he decide suddenly that unless there was lewd and graphic photos of Benoit Lee, he was going to unseal the case? It was in the record that all this other embarrassing stuff about the situation was publishable. The reason he stated was that he said that it would just be narrowly, I believe it was narrowly tailored, and only certain things would be sealed. All he said was lewd and graphic, and he said that a couple of times when he decided to unseal, and yet nothing had changed. In fact, if anything, a lot of bad stuff had happened in the meantime, so that's why I was pretty surprised. I'm kind of in the same corner, because like I say, I had gotten used to being sealed, and all of a sudden, Mr. Volokh filed this motion, and all of a sudden, we're in the middle of this argument of whether to seal or unseal the case. But I must say, to some extent, the horse is out of the barn, and that is because of the negligence of the district court, and the negligence of this court, because Mr. Volokh apparently found out about this, because when the contempt hearing, I believe, was held, either that or the temporary injunction ruling got into the legal press, notwithstanding the sealing. You know that. So all of those allegations are already out in public. Then, very mysteriously, our court apparently published either your brief or the opposition, the appellant's brief, notwithstanding the sealing order in this court. I didn't know that, but thank you for informing me. Well, I just found out about that yesterday, so I don't know what's wrong. It's one thing for courts to talk about unsealing cases where the parties have agreed, and where there aren't such dramatic family and privacy interests involved, but in a case like this, it's very hard to understand why the court screwed up. But, on the other hand, once the horse is out of the barn, what does that mean for your client? Not good. Let's put it that way. But I'd at least like to leave here today with her getting a pseudonym, and hopefully retroactively, and retracting the names of any family members that were published. That's my fallback goal. I understand that getting continued to be sealed is going to be a difficult battle, but nevertheless, I'd like to try anyway. Was there any mediation or kind of discussions with you and your opposition about how your concerns could be met and what they perceive as their needs could be met? Yes, I discussed it with the appellee, and he's in agreement that . . . Redaction. Redaction, and he wouldn't oppose a motion of redaction and a pseudonym for my client. All right. Anyway, as I said, this is a very unique case, and the only thing . . . to be honest with you, the only thing I could find anywhere near it was a California case called Doe v. Elam. David K. Elam II impersonated his girlfriend and went on a dating website, and also posted intimate pictures of her on a pornographic website, pictures and a video. The video had the title of . . . one of the videos had the title of . . . had her name and contact information. She later . . . he then posted the same pictures, or pictures, and videos and pictures, to friends and . . . to her friends and professional acquaintances. On December 22, 2014, his ex-girlfriend filed suit in the United States District Court for the Central District of California. And that's a big, long, involved site. It's on page four of my reply brief. I'm not going to try to read it off. But on May 19, 2015, his ex-girlfriend filed a motion to proceed under a pseudonym and to file certain documents under seal. The motion was granted in part and denied in part. The motion to proceed under a pseudonym was granted. However, the motion to . . . the girlfriend's request for a blanket order to file documents under seal was denied because the court said she did not present any evidence where they could make a decision on whether to file a blanket . . . grant a blanket order to seal it. Unlike the plaintiff in Doe v. Elam, my client did present much evidence about whether the court could seal her case. As I said, some of the evidence was in plaintiff's motion to seal records and for leave to file documents under seal, which again was granted. Additional arguments were presented in plaintiff's opposition to defend second motion to unseal documents, plaintiff's opposition to motion of Eugene Volokh to intervene and unseal, and the appellant's brief and reply brief in this appeal. To the defendant who . . . this was just another means . . . this lawsuit was just another means to harass, humiliate, get revenge, and punish my client, he continued to reveal his spiteful intent with some of his discovery requests. That's on page 16 of my brief. What he's trying to do here is use the court to say that, hey, she posted these pictures of herself on an Internet pornographic site and now she's suing me. He says, request for admission 18, admit or deny that you had an extramarital affair with Jason and a British Special Forces soldier while you were on a work trip prior to your relationship or during your relationship with the defendant. This is another attempt for him to use the court to try to get spite . . . vacate his spite on the defendant, I mean the appellant. Finally, request for admission 19, admit or deny that you were in danger from an international drug cartel during the month of December 2018 as a result of your thwarting a terrorist attack during one of your work trips. My client is a . . . my client is a flight attendant for Southwest Airlines. She's not an undercover agent or something like that contacting Mexican companies. She's a flight attendant for Mexican cartels and he's just using his imagination for spite. My client refused to answer these questions, but the defendant could have filed a motion to compel and they would have been brought before the court if given time. Unfortunately, the case was settled with the defendant before he could accomplish this and further acts of spite at trial. In conclusion, again, we ask for a long shot to maintain the order to seal in this case. This is in place currently due to the demonstrated spite of the defendant. Any alternative, if the court finds that this case should be unsealed, appellant requests the court allow her to take a pseudonym and redact any names of family members mentioned in previous pleadings. Like I said, the counsel for appellee has already agreed that he would not oppose the motion to . . . They request to redact family members' names and . . . There's some other private information there which is Social Security and address of the plaintiff in the pleadings. We definitely want to redact that. Thank you. Good morning and may it please the court. My name is Nora Browning on behalf of the appellee. The district court meticulously reviewed 1,121 pages of documents, line by line, for exactly one reason. To determine if anything was so private that it must be sealed from the public. It found nothing. This court should only overturn that finding if it finds that the district court abused its discretion. We ask this court to find that it did not for two reasons. First, the facts favoring the public's presumptive right of access is significant in this case. And second, this information is already public. And just last year, this court reiterated the principle that public information cannot be sealed. I would first like to start where the appellant left off, discussing the defendant's attempt to gratify his private spite in this case. The documents that were unsealed in this case were pleadings and orders from the judges, which cannot be said to vindicate the private spite of the defendant in this case. Further, I've read a lot of the discovery. Are you drawing a distinction between the plaintiff and defendant's pleadings and court orders and discovery requests? Yes, Your Honor. The discovery requests are not in the record. So the defendant's counterclaim is fair game for unsealing? Yes, Your Honor. Why? Because the defendant's claim against the plaintiff are part of the central claims of this case. Well, unfortunately, they're part of the central tort in the case. The district court granted a TRO, then it granted a temporary injunction, then it held this person in contempt because he was continuing to do spiteful, invasive violations of the plaintiff's family and personal security and wouldn't stop. And therefore, the complaint is legitimate. It's legitimate to look at that complaint as an ongoing act of revenge porn. The district court likely did consider whether the complaint was an ongoing form of revenge porn, an ongoing way to harass and traumatize the plaintiff. However, it weighed those concerns of potential spite versus the public's right of access and found that even in those instances where the defendant was maybe offering uncomfortable or embarrassing and humiliating information, it still did not overcome the public's right of access. Given the factual background that leads up to a contempt holding and the defendant pleading guilty to a stalking charge, is it the business of the courts to enable the continuance of the revenge by publicizing exactly what the plaintiff has a right to protect? It's not the business of the court to allow the defendant to continue traumatizing the plaintiff. It is the business of the court to determine if the defendant should be allowed to present his side of the argument. And further, if you look at the last page of the district court order, it instructs the defendant that he is cautioned to not file any more documents that contain lewd or graphic information of the plaintiff. And the court will be mindful if there are filings. And in that situation where it does occur, where there are graphic or lewd pieces of information in the record, then the district court will consider it then. However, looking over the record, it didn't find anything. Well, what's the best law for saying that the limit of unsealing is what is lewd and graphic? I mean, there's no question. I mean, you know, the parties settled, but I recently had to read various of these invasion of privacy tort cases, and there's little doubt that he was committing torts under Texas law. So what is invading privacy? And that the allegations of his complaint continue that which the court had enjoined him from doing. So where is the law saying that lewd and graphic is the limit of the court's authority to seal? Lewd and graphic is taken from Nixon v. Warner Communications where the Supreme Court considered kinds of cases that could be sealed. Additionally, something to be considered with the lewd and graphic verbiage that the district court used is the fact that these cases which involve lewd or graphic or humiliating information, such as Title VII claims, child pornography, these are all litigated in the public. And in those cases, pseudonyms and redactions are used as necessary, but they are part of the public's domain to view and observe and be a part of. But as you realize, Mr. Bollock, Professor Bollock didn't get involved in this until very late in the game, and the issue had only been presented to the court in terms of seal to protect the plaintiff against this defendant as opposed to pseudonyms, which the defendant as a pro se might well not have been able to comprehend. Yes, Your Honor, and in this case, the plaintiff could have, and as they cited the case Doe v. Ellum from the Central District of California, the plaintiff there- But again, was the defendant in that case a pro se? Was the defendant in that case held in contempt? No, the defendant was not pro se or held in contempt. Right. I think that puts a completely different picture on what's going on here. Because the defendant did not oppose the seal. after the lawsuit was filed. He had already violated the law for which he was arrested, but he did not cease his activities in respect of the court processes. And because of that- And because of that, he is increasing and enhancing the exposure, obviously, since the court's orders got out into the legal domain. I mean, that's exactly what he wanted, isn't it? No, Your Honor. It's hard for the appellee to say exactly what the defendant wanted, especially since it is contested from the plaintiff and defendant. Well, all I can say is whether it was- I'm sorry, I can't remember, but if it was the preliminary injunction hearing, the order that got out into the public domain, the preliminary injunction told him to stop doing everything immediately to harass this person and her family. And if that got out into the public domain, it had embarrassing allegations in it. If it was the contempt hearing order, it was even worse, because by that time they persuaded the district court that he was posting videos on porn sites. So either way, what was getting into the public domain was furthering his nefarious and vile purposes. That is one way to view the information. However, the fact that this information was put into the public domain, it's hard to say that it can be traced back to the defendant. You act like once it's in there, a judge is powerless to do anything. If I were a federal district judge, I would order all of that stricken. It could not be filed. I would order it purged from the record because it doesn't belong . . . the visual images I don't think belong in the public domain. Could the judge have done that? Yes, and there are no visual . . . Can the judge now go back and say, strike . . . I'm going to strike this because it's improper? Yes, the judge is within its power to strike or seal images, certain texts from the record if they are too graphic or lewd. And the court has to do a line-by-line balancing test, which they did here, and it found none of those pictures or those texts were lewd or graphic enough to strike from the record. Speaking for myself alone, I do not think what is criminally obscene or lewd or . . . what's the lesser under . . . pornographic under any other . . . is the limit of what is covered by the torts in question.  Because this fellow was going after a young teenage daughter, after the husband, after a friend whom he threatened. I see that I'm out of time. May I please . . . Well, please. I mean . . . So, to the first part of your question, these images and pictures, these pornographic images, are not in the record. I understand that. I've looked at large portions of the record. The issues related to the . . . But I'm saying that the legitimacy of sealing was not limited to videos or photos. Yes, and that's true, Your Honor. It is a balancing test. Okay. And if the court has no further questions, I will cede the time to the rep to my co-counsel. Thank you. Your Honor, this is Eugene Volokh representing the seal of Eppoli. So, Your Honor, if I may respond to your questions. So, the main material that Eppoli seeks are the court orders. And the material that forms the foundation of those court orders. The complaint, for example, the motions to seal, the responses to the motions to seal, and the like. You ask about the counterclaim. We believe that the counterclaim, as a pleading in the case, is essentially a portion of a . . . essentially a complaint on the other side, is also something that needs to be available to the public. It is a judicial document. In the words of the Bernstein case from the Second Circuit, I believe in 2016, the complaint is the cornerstone of a case. And a counterclaim is another cornerstone, the cornerstone of the responsive case. And in the Bernstein case, actually, that case was dismissed by settlement within just a couple of weeks after the filing. Nonetheless, the court says that it's important for the public to know . . . What was Bernstein about? Yeah. This was a financial dispute, although with . . . That's the point. We don't have any revenge. We don't have this in the context of revenge porn, which is probably why you wanted to write about it. Your Honor, actually, to the extent that this is relevant, the reason I wanted to write about this case is because of the possible First Amendment violations in the injunction and the preliminary injunction in the TRO, the question of why it was sealed, and also the magistrate judge's suggestion that I be barred from writing about it. But so I think under the standard legal meaning of revenge porn, the counterclaim is not revenge porn. The counterclaim does not contain . . . The allegations in the counterclaim are pretty horrible. Yes, Your Honor. They contain allegations of personal . . . That's my point. I mean, that's my point. That's precisely what the guy is doing. He's investing . . . He's manipulating the courts to further his revenge against the plaintiff. I mean, he's a pro se. I suppose the court could have imposed Rule 11 sanctions on him or something. Your Honor, as the Chief Judge Richman suggested, if the court really thought that these filings were entirely out of place, it could have stricken them from the record. That would have stripped them of statuses. But as it was, as soon as he filed, as you know, as soon as he filed that counterclaim, he gets hauled off by the police, or approximately at that time, and the whole thing gets stayed because the court is very concerned legitimately about his criminal procedural rights. It gets stayed for about 18 months. So there's no reason, you know, nothing happens for that period of time. Yes, Your Honor. Nonetheless, it could have been struck. I think the court did not strike it because . . . Well, nobody asked the court to strike it. And we're in novel territory, for sure, and the whole thing was allegedly under seal, although somehow the orders got in the public domain. Do you have any speculation about how that happened? Your Honor, I do not. I first saw them on Westlaw. So presumably at some point they were accessible to Westlaw's web crawlers or such. Well, one of the briefs on this appeal got into Westlaw, despite our former chief judge having granted a sealing order. I mean, we've got a serious procedural problem of our own, frankly. Yes, Your Honor. So returning to the counterclaim, just stepping back, the premise of this Court's and other courts' open access rules under the First Amendment and under the common law right of access is that cases are to be, generally speaking, litigated in public with some narrow exceptions. Let me just stop here for a second. People are being harmed here unquestionably. Is there some way to meet the information you need to write about what you want to write and protect this family? Your Honor, had this case been filed pseudonymously in the first place with a suitable motion? Even where we are right now. Your Honor, I'm not sure that the law generally permits redirective pseudonymization. I've been studying this. It turns out some courts say absolutely not, and other courts say, well, all right. I would have no objection if there's a motion for retroactive pseudonymization or if this Court retroactively pseudonymizes. I would not personally render any objection to that. And, in fact, courts sometimes do say that one merit of pseudonymization, in those fairly rare cases where pseudonymity is appropriate, one of the merits is precisely that the public could see virtually all that is going on, but without the names of the person. What do you do with what's in the public domain? Would you abide retroactively and not publish the names and redact what's in your possession and not publicly make that available? Your Honor, I don't feel comfortable stating that I would feel bound by any retroactive pseudonymization because I think just as a matter of First Amendment law, people in my position, people who write about cases, are entitled to write about whatever it is that is in the public domain and that was at the time that it was available in the public domain. So you're saying once a district court errs in putting something in the public domain, the courts are powerless to fix it? Your Honor, there is a disagreement among courts on this very subject. So the Seventh Circuit recently stated, to be sure, in a non-presidential order, in a case called, I want to say, Singh v. Omar, that retroactive pseudonymity, I'm working from memory, is an oxymoron, is a contradiction in terms. On the other hand, this having been said, I'm aware of cases. There was recently a district court case as well as an orderless, excuse me, orderless, opinionless, but order from the Ninth Circuit retroactively, I think, pseudonymizing. Why don't you file a 28J letter and provide us with all these citations? Your Honor, it would be a pleasure. I would definitely do that on retroactive pseudonymization. I know you know a lot more about these things than we do. Kind of you to say so, Your Honor. I will definitely do that. To go back to the oxymoron point, I think it's an oxymoron because, at least as far as the world is concerned, whoever had access to the documents before the pseudonymous redactions, retroactive, already have it. They're not taken away. But it is effective, obviously, in terms of the going forward. The court documents would stop using the names. Yes, Your Honor. It's just a matter of people have what they have and they have certain rights to do what they will. But at least the court can stop the spread, if you will. Yes, Your Honor. And, in fact, there are court decisions quite routinely that without revising the record, at least say in the opinion, there's no need necessarily to mention the names of the parties. And I just want to make sure. I think I've heard you say, and seen you write in the briefs, no objection to any of this type of redactions, not just names, but anything that's personally identifying. As to redaction, yes, Your Honor. The names of the other, of the family members, anything. Pictures, addresses. Yes, Your Honor. I would consent to that. As to the retroactive pseudonymization, I would not object to it. Although, again, I wouldn't necessarily endorse whether that is permissible. And, again, the 20HA letter will indicate. I want to make sure I understand what you're saying. Not with respect to your rights to publish what you want, but just in terms of what the court is going to do, what the district court would do with the record. You would have either no objection to, either you would be consenting to, or just wouldn't have a position on any of this redaction. Your Honor, yes. With the redaction of the names, including the names of the parties, the redaction of the name of the family members. Those are not relevant to what I want to be writing about. Pictures, identifying information. Yes, Your Honor. I do believe there are no lewd pictures in the record. There are some pictures in the record. Really, what you're here about is just don't seal the whole thing. Well, yes. Don't be so categorical. Be more targeted. Yes, Your Honor. Not just the lewd, but the identifying. Yes, Your Honor. I would go further and say that the district court did not abuse its discretion in unsealing the whole thing, possibly with the exception of a few relatively narrow items, such as the names of family members, addresses, social security members, which I was actually not aware were in there. So I thought you were distinguishing, or your co-counsel was distinguishing between the request for admissions and interrogatories and the motions and orders. Your Honor, the requests for admissions and interrogatories, as I understand it, were not as such filed in the record because they're merely discovery. However, they were cited in some documents, including ones that were filed by the plaintiff. So they have made their way into the record through filings by the plaintiff, including, again, I believe in a response to my motion to seal. And as far as you're aware, this other California case is the only case you know about that involves what amounts to a revenge porn. Yes, Your Honor. I don't know of any cases in which a case was sealed simply because it was revenge porn. California law, by the way, in state court does authorize in state court cases. Well, we don't follow California court very often here. You're not required to. Your Honor, most certainly. I realize my time is up. May I finish responding to your question? So I do believe that because of that there are California state cases that are litigated quite routinely as doe cases in revenge porn cases. But as to outright sealing, revenge porn cases, like other cases, are not litigated in secret. At most, there is some degree of redaction of the sexually themed images and pseudonymity of the parties' names. But outright sealing, I know of no case that was outright sealed simply because of it. But the whole point of revenge porn is different, though, right? Your Honor, revenge porn is different for two reasons. One is the actual images are quite routinely sealed. And the other is that there seems to be considerable latitude for pseudonymity, at least at the outset, rather than interactively, in revenge porn cases. I don't believe that revenge porn is different to the extent that one can have just revenge porn cases litigated entirely under seal. And there have been revenge porn cases. The Gawker case was one such case, which have been litigated as public cases, even though there was probably some sealing of the images themselves. Did you have a family involvement in the Gawker case? No, Your Honor. I was happy to sit that one out. Okay. Is that the Ressler? Yes, Your Honor. I'm so sorry. I'm working from memory. I believe it's called Bollea versus perhaps Gawker. It was, I believe, Hulk Hogan. That was the case that I think ultimately brought financial ruin to Gawker. Issues like this have to come up in state court, in family law, criminal law cases, where there's a lot of sensitive information in the pleadings about what was done to a child or a victim. How do state courts handle all that? Your Honor, my understanding is they handle it through a combination of two things. One is they seal the actual images. And the other is they do not name the victims. In the typical criminal case, the victim is not a party. So the rules are more relaxed than not naming a non-party victim. If there is, if it's a civil case, like a family court case or a tort case, whether about revenge porn or about other, disclosure of private facts, which is how some revenge porn cases are litigated, those cases are routinely litigated, again, in open court, albeit possibly with pseudonymization and with sealing of the images. I think you're, I think, I think you have to qualify that as to, as regards juveniles in family court. Quite, a lot of that is totally under seal, I believe. Your Honor, my understanding, I'm not... In Texas. Your Honor, I'm not a scholar of the subject, especially in Texas. Oh, we'll look it up. Yes. Your Honor, certainly juvenile justice cases are a rare category of cases that are often litigated entirely under seal. However, family court cases involving juveniles, as I understand it, are generally litigated in public, albeit with a juvenile's identities concealed. But you, they, courts do hold sealed hearings. They empty the court ring. And they seal the transcripts. Yes, Your Honor, and that is an example of the document-by-document and sometimes line-by-line approach that this Court's sealing jurisprudence calls for. That generally speaking, the preference... But the test is not lewd. That's not the test. So, Your Honor, under the First Amendment, there has to be a compelling government interest. Yes. So, there is a compelling... The test isn't lewd, is my point. So, Your Honor, there is a compelling government interest in preventing the disclosure of lewd and graphic material, especially in the revenge porn context. I don't believe there's a compelling government interest in preventing the disclosure in the judicial context simply of private allegations of the sort that are routinely litigated. There's no compelling government interest to protect the integrity of the family structure. Your Honor, I would say there's no compelling government interest in protecting against disclosure of legally relevant allegations having to do with supposed improprieties. Returning to the criminal cases, for example, it's quite routine in a criminal case for a person to be prosecuted for alleged sexual improprieties. Of course, in that case, criminal sexual improprieties. And all of that is a matter of public record, even though that could be extremely embarrassing to other family members. But you've got a great length to not identify the child or the person, pictures, names, that sort of thing. Generally speaking. Yes, Your Honor. Generally speaking, the names of... I mean, those can't even be prosecuted unless the complainant agrees, which is why so many of those cases are not prosecuted. Yes, Your Honor. Actually, I should qualify what I was saying. Even in sexual assault cases, where allegations of rape, for example, in a civil case, there's not a unanimous judgment in favor of pseudonymity among district courts. Their split may be with a majority supporting pseudonymity in such cases for the alleged victim and a substantial minority not allowing that. So even in that kind of situation, there's no categorical rule, not just of sealing, but not even of pseudonymity. So as a general matter, in the cases that you're describing, there is no outright sealing of the case, occasionally sealing of hearings, and more often redaction of particular passages from documents. Well, then this Court abused our discretion in sealing the appellate documents, trying to seal them. Your Honor, I oppose the motion to seal those documents because I think the public is entitled to know what goes on in appellate courts. Your Honors, thank you very much. I'm so sorry I ran over time. Thank you. I don't have much further to say other than to say that revenge porn and what's associated with it is unlike any other tort in that it's an attack directly on the victim. Really, like any other crime, I should say crime because think of all the other crimes or torts. They're not even slander or libel. You're just saying something bad about the other person. But revenge porn is directly attacking that person. And thank you very much for hearing me out today. That will conclude today's arguments. The Court is in recess until 9 o'clock in the morning.